UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ARMANDO RODRIGUEZ ORTIZ,<br><br>    Plaintiff,<br><br>    v.<br><br>SUZAN HUBBARD, Director, CDCR; M.S. EVANS, Warden; M. MOORE III, Assistant Chief Deputy; G. LEWIS, Associate Deputy Warden; Captain G. PONDER; Captain B. F. RANKIN; Lieutenant E. MOORE; Lieutenant J. CELAYA; Correctional Counselor II V. SOLIS; Sergeant E. JONES; Correctional Officers E. BEASLEY, R. SINGH, V. LOGAN, H. GONZALES, T. REYNOLDS, R. MORRING, M. PEREZ, J. EBNER, and JOHN DOES I & II; and Correctional Counselor II R. BURGH,<br><br>    Defendants.<br>_____/ | No. C 11-0399 PJH (PR)<br><br>**ORDER GRANTING MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT** |

This is a civil rights case filed pro se by a state prisoner. Defendants Hubbard, Singh, Lewis, Reynolds, Gonzales, M. Moore, Solis, Ponder, Hedgepeth, E. Moore, Celaya, Beasley, Rankin, Logan, Morring, Burgh, Jones and Perez ("defendants") have filed motions to dismiss some of plaintiff's claims and for summary judgment on the others. After the motions were ready for ruling, the Ninth Circuit decided *Woods v. Carey*, 684 F.3d 934 (2012), in which it held that it is not sufficient to give the notices required by *Rand v. Rowland*, 154 F.3d 952, 953-954 (9th Cir. 1998) (en banc), and *Wyatt v. Terhune*, 315 F.3d 1108, 1120 n. 4 (9th Cir. 2003), prior to the time motions for summary judgment or to dismiss for failure to exhaust are filed. *Id.* at 940-41. This court gave the required notices in July and extended the time for plaintiff to oppose the dispositive motions.

Plaintiff has filed an extensive response and defendants have replied. The defendants' motions will be granted for the following reasons.

## DISCUSSION

### I. Defendants

Plaintiff states in his opposition that he wants to dismiss his claims against defendants Gonzalez, Reynolds, Morring, and Perez. Opp'n at 1-2, 12. Gonzalez, Reynolds, Morring, and Perez state in their reply that they agree with plaintiff's request. Reply at 2. The claims against Gonzalez, Reynolds, Morring, and Perez will be dismissed.

Anthony Hedgepeth was served, although plaintiff does not name him as a defendant in the complaint and the court did not order service on him. He is named as one of the movants in the defendants' dispositive motions. Because plaintiff did not assert any claims against him, he will be dismissed from the case.

Service was not achieved on defendant J. Ebner. The claims against him will be dismissed for failure to serve him within 120 days. *See* Fed. R. Civ. P. 4(m).

### II. Motion to Dismiss

Defendants move to dismiss plaintiff's excessive force claims, contending that he did not administratively exhaust them. The excessive force claims are asserted against defendants Singh, Beasley, Logan, Lewis, E. Moore, E. Jones, H. Gonzalez, T. Reynold, R. Morring, and M. Perez. Plaintiff has voluntarily dismissed his claims against Gonzalez, Reynolds, Morring, and Perez, so the relevant defendants on the motion to dismiss are Singh, Beasley, Logan, Lewis, E. Moore, and E. Jones.

The Prison Litigation Reform Act of 1995 amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Although once within the discretion of the district court, exhaustion in prisoner cases covered by § 1997e(a) is now mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). All available remedies must now be exhausted; those remedies "need not

meet federal standards, nor must they be 'plain, speedy, and effective.'" *Id.* (citation omitted).  Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.  *Id.*; *Booth v. Churner*, 532 U.S. 731, 741 (2001).  Similarly, exhaustion is a prerequisite to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  *Porter*, 534 U.S. at 532.

Nonexhaustion under § 1997e(a) is an affirmative defense.  *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir 2003).   It should be treated as a matter of abatement and brought in an "unenumerated Rule 12(b) motion rather than [in] a motion for summary judgment." *Id.* (citations omitted).  In deciding a motion to dismiss for failure to exhaust administrative remedies under § 1997e(a), the court may look beyond the pleadings and decide disputed issues of fact.  *Id.* at 1119-20.  If the court concludes that the prisoner has not exhausted California's prison administrative process, the proper remedy is dismissal without prejudice.  *Id.* at 1120.

Plaintiff's excessive force claims involve two incidents on November 28, 2006, one at approximately 2:30 pm when defendant Singh used pepper spray on plaintiff and his cellmate, and one about four hours later, when a "cell extraction" procedure was used to remove plaintiff and his cellmate from their cell.  Compl. at 7-12.  Defendants contend that plaintiff did not properly exhaust these claims.

The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal."  *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  "The text of 42 U.S.C. § 1997e(a) strongly suggests that the PLRA uses the term 'exhausted' to mean what the term means in administrative law, where exhaustion means proper exhaustion."  *Id.* at 92.  Therefore, the PLRA exhaustion requirement requires proper exhaustion.  *Id.*  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Id.* at 90-91 (footnote omitted).

3

California's rules regarding inmate administrative appeals as they were in 2006 – they were changed in 2011 – required that the administrative appeal/grievance be filed within fifteen working days of the event giving rise to the grievance, that is, by December 19, 2006. *See* Cal. Code Regs. tit. 15, § 3084.6(d) (2006); Decl. Medina, ¶ 5. The declaration of E. Medina, the Inmate Appeals Coordinator at the prison, and the attached record of plaintiff's grievances, are evidence that plaintiff did not file a grievance within that time. Decl. Medina at ¶ 10; *id.* at Ex. A. He did file a grievance about the November 28, 2006, incident, naming Singh, on January 29, 2007. Decl. Medina at ¶ 12. It was screened out as untimely, as it clearly was. *See id.*

Plaintiff says in the complaint that he filed a grievance about the November 28 incidents on December 21, 2006. Compl. at 13. In his opposition to the motion to dismiss he says that the December 21 date was "imp[ro]vised" because he had not dated the duplicate copy he kept for his own use. Opp'n at ¶ 10. He asserts that he filed a grievance "on time," *Id.* at ¶ 9, but does not provide any factual details to support this conclusory statement. He also says that Singh came to his cell on December 25 and offered him and his cellmate some minor privileges if they would drop their grievances, which he contends supports his contention that he did file a grievance prior to that date. *Id.* at ¶ 12. This is supported by a declaration from his cellmate. Opp'n at Ex. A. This is not, however, evidence that plaintiff filed a grievance within the time allowed; "prior to December 25" is not the same as "by December 19." The evidence therefore requires the conclusion that plaintiff did not file a grievance on or before December 19, and thus did not properly exhaust. The motion will be granted.

**III.    Motion for Summary Judgment**

Defendants move for summary judgment on plaintiff's remaining claims, that (1) his rights were violated in connection with his placement in administrative segregation and transfer to another prison; (2) his grievances were handled improperly; and (3) he was deprived of certain property.

4

**A.   Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.  If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

**B.   Analysis**

**1.   Administrative Segregation and Transfer**

On December 25, 2006, plaintiff made a video statement contending that defendant Singh used excessive force by pepper spraying him in the November 28 incident discussed above.  Compl. at 15.  That same day he was placed in administrative segregation while his complaint was investigated.  Decl. Kimbrell Ex. C.  On January 25, 2007, a forty-five day extension of his placement in administrative segregation was approved "to protect the integrity of an ongoing investigation."  Compl., Ex. D at 8.  On March 23, 2007, he was given a "Confidential Information Disclosure Form" informing him that an employee feared that plaintiff would assault the employee given the opportunity. *Id.* at 8.  On March 29, 2007, he appeared before an Institutional Classification Committee, which determined that he should be transferred to another institution because of the employee's concerns for his safety.  Opp'n, Ex. J.  On May 8, 2007, plaintiff was "endorsed" for transfer by the "CSR."

After the United States Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472 (1995), allegations by a prisoner that he was denied due process in connection with the decision to administratively segregate him does not present a constitutionally cognizable claim, absent a showing that the specific deprivation at play was one of "real substance." *See, e.g., May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (mere placement in administrative segregation not enough to state claim after *Sandin*); *Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (despite prior case law determining disciplinary regulations created liberty interest, under *Sandin* no liberty interest when inmate placed in disciplinary segregation for fourteen days); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (loss of mere opportunity to earn good time credits because of placement in administrative segregation does not create protected liberty interest). "Real substance" means freedom from (1) a restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin*, 515 U.S. at 484, or (2) state action that "will inevitably affect the duration of [a] sentence," *id.* at 487.

*Sandin* requires a factual comparison between conditions in the plaintiff's former status and his new status, examining the hardship caused by the challenged action in relation to the basic conditions of life as a prisoner. *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003). Here, defendants contend that plaintiff had no liberty interest in not being segregated, and plaintiff has failed to provide facts that would generate a genuine dispute of material facts as to whether his new status was an atypical and significant hardship compared to the ordinary incidents of prison life. *See Nissan*, 210 F.3d at 1102 (9th Cir. 2000) (burden to set forth specific facts showing that there is a genuine issue for trial). Because the administrative segregation did not involve a deprivation of real substance, defendants are entitled to summary judgment on plaintiff's claim that his rights were violated by his placement in administrative segregation.

Alternatively, if plaintiff does have a liberty interest in not being placed in administrative segregation, he has failed to establish that the procedures followed were not adequate. When prison officials initially determine whether a prisoner is to be segregated

6

1 for administrative reasons, due process requires that they (1) hold an informal
2 nonadversary hearing within a reasonable time after the prisoner is segregated, (2) inform
3 the prisoner of the charges against him or the reasons segregation is being considered,
4 and (3) allow the prisoner to present his views. *See Toussaint v. McCarthy*, 801 F.2d 1080,
5 at 1100 (9th Cir. 1986), *overruled in part on other grounds*, *Sandin*, 515 U.S. 472.
6 Although the information is scattered in the record, there is evidence that plaintiff received
7 hearings on his assignment to administrative segregation on December 28, 2006, and on
8 March 29, 2007. Compl., Ex. D at 5 (December 28, 2006); Opp'n, Ex. J (March 29, 2007).
9 The records of the hearings and plaintiff's declaration attached to his opposition as part of
10 exhibit J clearly indicate that plaintiff presented his side of the matter. *Id.* In any case,
11 defendants have alleged that he was afforded his procedural rights, and plaintiff has failed
12 to provide any materials showing that he was not given notice, afforded an informal
13 nonadversary hearing, or allowed to present his views. Defendants are entitled to
14 summary judgment on the administrative segregation claim on this alternative theory.

15 Plaintiff also contends that his rights were violated in connection with his transfer to
16 another institution. Prisoners have no constitutional right to incarceration in a particular
17 institution. *See Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983). A prisoner's liberty
18 interests are sufficiently extinguished by his conviction that the state may generally confine
19 or transfer him to any of its institutions, to prisons in another state or to federal prisons,
20 without offending the Constitution. *See Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir.
21 1985). "It is well settled that the decision where to house inmates is at the core of prison
22 administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 39 (2002). To the extent that
23 plaintiff's claim is that he should not have been transferred, or that he was unfairly
24 transferred, or that he was not afforded due process in the transfer, the claim is without
25 merit as a matter of law, and defendants are entitled to summary judgment as to it.

26 Plaintiff also contends, however, that the transfer was in retaliation for his having
27 filed a staff complaint against Singh for the pepper spraying incident. "Within the prison
28 context, a viable claim of First Amendment retaliation entails five basic elements: (1) An

7

assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); *accord Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline).

The prisoner bears the burden of proving absence of legitimate correctional goals for the conduct of which he or she complains. *Pratt*, 65 F.3d at 806. Here, the summary judgment materials show that Singh felt himself in danger of assault from plaintiff, and that the transfer was nonadverse, so it did not have a detrimental impact on plaintiff's record. There is no genuine dispute of material fact as to these points, which show that there was a legitimate penological purpose to the transfer. Summary judgment will be granted on the retaliation claim.

**2. Grievances**

Defendants address in their motion for summary judgment what they perceive to be plaintiff's claim that his due process rights were violated by their alleged failure to properly handle his grievances.[1] Mot. Summ. J. P. & A. at 24-25.

Defendants are correct that there is no due process right to access to a grievance system. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). However, plaintiff contends in his opposition to the motion for summary judgment that failure to permit a prisoner to exhaust has the effect of blocking his or her access to the courts because of the AEDPA's exhaustion requirement. Opp'n at 15.

To succeed on a claim that prison officials interfered in a prisoner's access to the courts, the prisoner must show that he or she suffered an "actual injury." *Silva v. Di*

---

[1] Plaintiff does not list this as a separate issue in the complaint.

8

*Vittorio*, 658 F.3d 1090, 1102, 1104 (9th Cir. 2011). Plaintiff does not assert that he suffered any actual injury, and the only injury that seems possible is the dismissal here of his excessive force claims for failure to exhaust. But as discussed above, there is no genuine dispute of material fact that plaintiff did not file a grievance within the time allowed to do so; any failure by defendants to properly handle his subsequent grievances had no effect on the outcome here. There thus is no genuine dispute of material fact that defendants' handling of grievances did not cause actual injury. Defendants are entitled to summary judgment on this claim.

### 3. Property

Plaintiff contends that when he was moved to administrative segregation his property was packed up and those items he was not allowed in segregation put into storage. When he was released from segregation and transferred, some of the property was missing.

To the extent this claim is for the negligent or intentional deprivation of property, plaintiff has not stated a due process claim under § 1983. *See Parratt v. Taylor*, 451 U.S. 527, 535-44 (1981) (state employee negligently lost prisoner's hobby kit), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional destruction of inmate's property). The availability of an adequate state post-deprivation remedy, e.g. a state tort action, precludes relief because it provides adequate procedural due process. *King v. Massarweh*, 782 F.2d 825, 826 (9th Cir. 1986). California law provides an adequate post-deprivation remedy for any property deprivations. *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895). Nor is a prisoner protected by the Fourth Amendment against the seizure, destruction or conversion of his property. *Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989).

Plaintiff does, however, also claim that the loss of his property was done in retaliation for his having filed a staff complaint against Singh. Defendants contend that he has no evidence to support his proposition

To establish his retaliation claim, plaintiff would have to show the elements set out in

the discussion of retaliation in the section above, including the causation element – that the reason the property was not returned to him was in retaliation for his grievance naming Singh. *See Rhodes*, 408 F.3d at 567-68. He has provided no facts what would link the disappearance of the property to his grievance. Summary judgment will be granted for defendants on this claim.

## CONCLUSION

1. Anthony Hedgepeth is **DISMISSED** from the case because plaintiff did not intend him to be a defendant.

2. Plaintiff's request to dismiss his claims against defendants Gonzalez, Reynolds, Morring, and Perez is **GRANTED**. The claims are **DISMISSED** with prejudice.

3. The claims against defendant Ebner are **DISMISSED** without prejudice for failure to obtain service. *See* Fed. R. Civ. P. 4(m).

4. The motion to dismiss the excessive force claims against them filed by defendants Singh, Beasley, Logan, Lewis, E. Moore, and E. Jones (docket # 40) is **GRANTED**. The excessive force claims are **DISMISSED** without prejudice.

5. Defendants' motion for summary judgment on the remaining claims (docket # 40) is **GRANTED**.

The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September 25, 2012.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\CR.11\ORTIZ0399.msj.wpd

10